UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Mazen Khdeer,                                   Civ. No. 18-2112 (ECT/BRT)

      Petitioner,

v.                                              **REPORT AND RECOMMENDATION**

Warden David Paul,

      Respondent.

---

Mazen Khdeer, Reg. No. 58611-060, Federal Medical Center, Rochester, MN 55903-4000, *pro se* Petitioner.

Ana H. Voss, Esq., Assistant United States Attorney, counsel for Respondent.

---

BECKY R. THORSON, United States Magistrate Judge.

In this petition for relief under 28 U.S.C. § 2241, Mazen Khdeer alleges that prison officials abused their discretion by reducing his placement time in a Residential Reentry Center ("RRC"). (Doc. No. 1, Habeas Pet.) Petitioner is on long-term anti-coagulation therapy due to a history of myocardial infarction ("MI") with stent placement, and his placement time was reduced to sixty days due to his serious medical needs. For the reasons stated below, this Court recommends that the petition be denied.

**I.    Background**

    **A.    Petitioner's Conviction and Release Date**

Petitioner is currently incarcerated at the Federal Medical Center in Rochester, Minnesota. (Doc. No. 13, Declaration of Jon Gustin ("Gustin Decl.") ¶ 22, Ex. B at 2.)

He is serving a 57-month term of imprisonment for the following convictions: Conspiracy to Launder Money; Malicious Use of Fire to Damage a Building Used in Interstate Commerce; Conspiracy to Harbor Aliens; Health Care Provider Fraud; and False Claims. (*Id.*) Petitioner's projected release date is March 2, 2019. (*Id.*)

### B. RRC Placement and Home Confinement

The Second Chance Act of 2008 ("SCA") authorizes the Bureau of Prisons ("BOP") to grant an inmate up to twelve months in a pre-release RRC placement at the end of their sentence "to the extent practicable." 18 U.S.C. § 3624(c)(1). An inmate can also be eligible for home confinement at the end of their sentence for ten percent of their term of imprisonment or six months, whichever is shorter. *Id.* § 3624 (c)(2). The BOP is required to consider each inmate's pre-release placement on an individual basis using five factors: (1) the resources of the facility contemplated, (2) the nature and circumstances of the offense, (3) the history and characteristics of the prisoner, (4) any statement by the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of penal or correctional facility as appropriate, and (5) any pertinent policy statement by the United States Sentencing Commission. *Id.* § 3621(b)(1)–(5).

Approximately seventeen to nineteen months before an inmate's projected release date, an inmate's Unit Team will review the inmate for pre-release RRC placement and an appropriate length of home confinement, using the five factors of § 3621(b). (Gustin Decl. ¶ 8.) In addition to basic needs, such as securing identification, employment, and housing, Unit Team staff will determine if an inmate has other needs that can be met at

the RRC during a potential placement. (*Id.* ¶ 9.) For a majority of inmates, an additional need is community drug programming. (*Id.*) To successfully complete what is known as a Residential Drug Abuse Program ("RDAP"),[1] an inmate must complete a minimum of 120 days in a Transitional Drug Abuse Treatment ("TDAT") program while in community confinement. 28 C.F.R. §§ 550.53(a)(3), 550.56; (Gustin Decl. ¶ 9). Under some circumstances, an inmate who successfully completes RDAP is eligible to receive up to a twelve-month sentence reduction. 18 U.S.C. 3621(e)(2)(B); (Gustin Decl. ¶ 9). If an inmate cannot fulfill the TDAT portion of RDAP before their provisional § 3621(e) release date, their provisional release date can be adjusted "by the least amount of time necessary to allow inmates to fulfill their treatment obligations." 28 C.F.R. § 550.55(c)(3); (Gustin Decl. ¶ 9).

After an inmate's Unit Team has considered the inmate's individualized needs and factors under § 3621(b) and the institution's warden has approved their recommendation regarding home confinement and an appropriate length of pre-release RRC placement and RRC location, the institution's recommendation is forwarded to the Residential Reentry Manager field office ("RRM") that oversees the proposed RRC. (Gustin Decl. ¶ 10.) RRM staff finalize the recommendation after considering the resources of the facility contemplated. *See* § 3621(b)(1); (Gustin Decl. ¶ 10). RRM staff are trained to not

---

[1] The Residential Drug Abuse Program ("RDAP") was created by the BOP pursuant to the Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994. Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b).

unilaterally deny pre-release RRC referrals or reduce a placement recommendation unless there are no available RRC beds within a reasonable distance for the inmate's specific date or timeframe. (*Id.*)

### C.     Inmates With Medical Needs

The BOP recognizes that some inmates may not be medically suitable for community placement if they require ongoing medical treatment or have uncontrolled medical conditions. (Doc. No. 14, Declaration of Gregg Fearday ("Fearday Decl.") ¶ 10.) An inmate who has a medical complication while on community placement may no longer be able to comply with the terms of community placement and may need to be returned to a BOP institution. (*Id.*) The inmate would still be able to continue to address his release needs from a BOP facility with the assistance of staff, such as social workers and the inmate's Unit Team. (*Id.*) By contrast, if the inmate needed hospitalization in a local medical facility, the ability to address the inmate's release needs would be severely limited. (*Id.*)

Thus, when considering an inmate with complex medical conditions for a community placement, the risk of complications that could occur during the placement, including the nature and severity of the potential complications, is balanced against the inmate's need for release preparation in the community. (*Id.* ¶ 11.) RRM staff therefore consult with medical staff to determine whether the requisite medical services are available in the community where placement is being considered. (*Id.*) Based on guidance from medical staff, the Residential Reentry Sector Administrator will make a final decision about an inmate's suitability for community placement. (*Id.*)

4

### D.     BOP Measures to Meet Budget Requirements

On October 10, 2017, Hugh J. Hurwitz, Acting Assistant Director for the Reentry Services Division, issued a memorandum to the Bureau's Regional Directors regarding nationwide changes taken to ensure RRC operations remain within budgetary allocations. (Gustin Decl. ¶ 11, Ex. A ("Hurwitz Memorandum").) The first major change mentioned in the Hurwitz Memorandum was the discontinuation of sixteen underutilized RRC contracts. (*Id.* ¶ 12, Ex. A.) The second major change was the need to bring RRC contract usage to within contracted operating capacity. (*Id.* ¶ 14, Ex. A.) These changes resulted in decreased length of pre-release RRC placements for a significant number of inmates. (*Id.* ¶ 16.) The Hurwitz Memorandum explained: "The average length of stay for BOP inmates in RRCs has increased in recent years to approximately 145 days. Due to fiscal constraints and the contract actions described above, the average length of stay is likely to decline to about 120–125 days." (*Id.* ¶ 17, Ex. A.) This forecast was stated as an average because the BOP Residential Reentry Management Branch ("RRMB") recognized its obligation to consider each inmate for a pre-release RRC placement on an individual basis. (*Id.* ¶ 18.)

### E.     Petitioner's Consideration for Community Placement

On February 15, 2018, Unit Team staff reviewed Petitioner for RRC placement and recommended to the FMC Rochester Warden that he be placed into a pre-release RRC placement near Toledo, Ohio, for 181–270 days. (Gustin Decl. ¶ 23, Ex. C at 1.) During this review, Unit Team staff considered the nature and circumstances of Petitioner's offenses and noted that he had his GED, was making his financial

5

responsibility payments, and participated in counseling, educational, vocational, and release preparation programs. (*Id.* ¶ 23, Ex. C at 3–5.) The Unit Team noted his need to seek employment, medical providers, and a driver's license while at the RRC and his desire to assist his children with their medical issues during his placement. (*Id.* ¶ 23, Ex. C at 2.) Petitioner's Unit Team determined a pre-release RRC placement of 181–270 days would be sufficient to afford him a reasonable opportunity to adjust to and prepare for reentry into the community. (*Id.* ¶ 23, Ex. C at 1.)

FMC Rochester's recommendation was referred to the Cincinnati RRM to be finalized after consideration of the resources of the contemplated facility. *See* § 3621(b)(1); (*Id.* ¶ 24). RRM staff noted Petitioner had some serious medical needs, and therefore forwarded his referral to a Health Systems Specialist ("HSS") for medical clearance. (*Id.*)

Upon further review, the HHS recommended a sixty-day RRC placement to the Sector Administrator as being the most appropriate for Petitioner. (Fearday Decl. ¶ 12.) Petitioner is on long-term anti-coagulation therapy due to a history of myocardial infarction ("MI") with stent placement. (*Id.*) According to the HHS, if Petitioner were to have medical complications at an RRC, the complications would likely be heart-related and would result in an extended hospital stay for recovery, during which he would have no assistance with his reentry needs. (*Id.*) To balance this risk against Petitioner's need to address his release needs in the community, the HSS considered how long Petitioner could potentially remain stable at an RRC with minimal medical intervention. (*Id.*) The HHS's experience indicates that inmates on anti-coagulation therapy with histories of MI

6

and stents can remain relatively stable at an RRC for sixty days. (*Id.*) The Sector Administrator concurred with the recommendation of the HHS. (*Id.* ¶ 13.)

After reviewing the available RRCs near Toledo, Ohio, RRM staff determined the most appropriate RRC for Petitioner would be Volunteers of America Greater Ohio Residential Reentry in Toledo, and selected a placement date of January 2, 2019. (Gustin Decl. ¶ 24.) Until that date, RRM Staff assures that Petitioner can continue to work on his release needs with the assistance of FMC Rochester staff. (Fearday Decl. ¶ 13.)[2]

## II. Analysis

Petitioner alleges that the BOP violated federal law and his rights to due process and equal protection by failing to comply with the § 3261(b) factors in determining his RRC placement. (Habeas Pet. 9–11.) Petitioner also alleges that the BOP abused its authority by adopting the rules stated in the Hurwitz Memorandum without complying with the "notice and comment" requirements of the Administrative Procedure Act ("APA"). (*Id.* at 3, 7–9.) The Government argues that it conducted an individualized review to determine Petitioner's community placement, that Petitioner has no constitutional right to an RRC placement, and that the Court lacks subject-matter jurisdiction because federal law precludes judicial review of the BOP's individualized RRC placement decisions. (Doc. No. 12, Gov't's Mem. 19–28.) The Government further

---

[2]     Although the length of Petitioner's recommended RRC placement was reduced to sixty days due to his medical needs, the Warden erroneously advised Petitioner it was due to bed space issues at the RRC. (*See* Doc. No. 4; Gustin Decl. ¶¶ 24–25; Fearday Decl. ¶¶ 12–13.)

argues that Petitioner lacks standing to challenge the BOP's adoption of a rule that did not impact his RRC placement. (*Id.* at 12–13.)

### A.     The Court Does Not Have Jurisdiction to Review Petitioner's RRC Placement[3]

Under the APA, courts can review decisions of federal administrative agencies to determine whether they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). APA review is not allowed, however, where judicial review is precluded by statute, or where agency action is committed to agency discretion by law. 5 U.S.C. § 701(a).

One statute that precludes judicial review is 18 U.S.C. § 3625, which provides that the "provisions of sections 554 and 555 and 701 through 706 of title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." The phrase "this subchapter" refers to subchapter C, 18 U.S.C. §§ 3621–3626, which generally govern BOP authority with respect to federal prisoners. *See Martin v. Gerlinski*, 133 F.3d 1076, 1079 (8th Cir. 1998) (explaining that § 3625, which exempts "any determination, decision, or order under [§§ 3621–3626]" from review under the Administrative Procedure Act, "precludes judicial review of [BOP] adjudicative decisions"); *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2001) ("To find that

---

[3]     Petitioner filed this action in the correct venue, and 28 U.S.C. § 2241 is the correct statutory vehicle for Petitioner's claims. *See Nichols v. Symmes*, 553 F.3d 647, 649 (8th Cir. 2009) ("[A] claim attacking the execution of [a] sentence should be brought in a § 2241 petition in the jurisdiction of incarceration.").

prisoners can bring habeas petitions under 28 U.S.C. § 2241 to challenge the BOP's discretionary determinations made pursuant to 18 U.S.C. § 3621 would be inconsistent with the language of 18 U.S.C. § 3625."). Several courts in this district have held that § 3625 precludes judicial review of the BOP's discretionary decisions under §§ 3621 and 3624 in the context of RRC and home placement. *See Simon v. LaRiva*, Case No. 16-cv-146 (ADM/TNL), 2016 WL 1626819, at *6 (D. Minn. Mar. 10, 2016) ("The BOP's decision ultimately to place Petitioner in home confinement for three months, rather than six months, was discretionary and this Court lacks subject matter jurisdiction over Petitioner's challenge to the BOP's application of the § 3621(b) factors and other considerations in reaching that decision."); *Crawford v. Nicklin*, Civil No. 13-2462, 2014 WL 538699, at *7 (D. Minn. Feb. 11, 2014) ("Courts in this District have also found § 3625 precludes judicial review of BOP discretionary decisions under § 3621.") (collecting cases); *Barakat v. Fisher*, No. 13-1296, 2013 WL 6058932, at *1 (D. Minn. Nov. 18, 2013) ("To the extent Barakat challenges the particular determination in his case of the RRC placement, the Court lacks subject matter jurisdiction to review the [BOP's] discretionary decision . . . ."); *Ambrose v. Jett*, No. 13-2343, 2013 WL 6058989, at *7 (D. Minn. Nov. 15, 2013) ("[T]his Court does not have jurisdiction to review the ultimate discretionary decision by the BOP under §§ 3621(b) or 3264(c) to place Ambrose in an RRC or in home confinement placement.").

Therefore, to the extent that Petitioner seeks review of the BOP's placement decision, this Court lacks jurisdiction to review that decision.[4]

### B.     Alternatively, the Petition Should be Denied on the Merits

Section 3625 generally precludes judicial review of BOP discretionary decisions, but it does not preclude judicial review for any allegations that the BOP's action is contrary to established federal law, violates the Constitution, or exceeds statutory authority. *See Ambrose*, 2013 WL 6058989, at *7 (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011); *Reeb*, 636 F.3d at 1228). As discussed in the previous section, the BOP has been given the statutory authority to "designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). RRCs and home confinement are considered places of confinement or imprisonment pursuant to this authority. *See id.* § 3624(c); *Elwood v. Jeter*, 386 F.3d 842, 846 (8th Cir. 2004).

Petitioner's Unit Team completed an individualized RRC placement determination using the five factors set forth in § 3621(b). The RRM office then finalized a placement of January 2, 2019, after considering Petitioner's medical needs and the resources of the facility. (*See* Gustin Decl. ¶¶ 23–24, Ex. C; Fearday Decl. ¶¶ 12–13.) Accordingly, the BOP provided a good faith consideration of the § 3621(b) factors and satisfied the requirements of the SCA. *See Miller v. Whitehead*, 527 F.3d 752, 758 (8th Cir. 2008)

---

[4]     The Court notes that in *Bohrn v. Marques*, Civ. No. 18-826 (MJD/BRT), the Eighth Circuit signaled that it might disagree with this jurisdictional analysis. *See Bohrn v. Marques*, 739 F. App'x 364 (8th Cir. Oct. 15, 2018). Therefore, the Court finds it appropriate, as it did before, to address the merits of Petitioner's challenge. *See id.* ("Construing Bohrn's petition as a challenge to the BOP's general policies regarding RRC placement, we agree with the district court's alternative disposition.").

(holding that a brief analysis of the § 3621 factors is sufficient); *see also Simon*, 2016 WL 162819, at *5 ("So long as the BOP made an individualized determination in accordance with the appropriate considerations, this Court does not have jurisdiction to evaluate the BOP's exercise of discretion.").

Furthermore, Petitioner does not have a constitutionally protected liberty interest in serving his sentence at a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Moorman v. Thalacker*, 83 F.3d 970, 973 (8th Cir. 1996). Therefore, this action should be denied on the merits, if not dismissed for lack of subject-matter jurisdiction, because Petitioner has no constitutional right to a pre-release RRC or home confinement placement. *See, e.g.*, *Davis v. Bledsoe*, No. 3:11-CV-1864, 2012 WL 175401, * 4 (M.D. Pa. Jan. 20, 2012) ("The Magistrate Judge correctly determines that Petitioner does not have a constitutional right to RRC placement and that the Second Chance Act, while authorizing pre-release placement, does not mandate that he be released into an RRC.").

### D.   Petitioner's Challenge to the Hurwitz Memorandum

Petitioner argues that the policies set forth in the Hurwitz Memorandum were adopted in violation of the APA. (Habeas Pet. 3.) Petitioner's RRC placement for sixty days was due to his medical needs and was not impacted by the Hurwitz Memorandum. (*See* Fearday Decl. ¶ 12.) Therefore, Petitioner lacks standing to challenge the Hurwitz Memorandum. *See Gerlich v. Leath*, 861 F.3d 697, 704 (8th Cir. 2017) (explaining that Article III standing requires "(1) injury in fact, (2) a causal connection between that injury and the challenged conduct, and (3) the likelihood that a favorable decision by the court will redress the alleged injury"). Even if Petitioner had standing, the policies

11

described in the Hurwitz Memorandum are not "rules" requiring compliance with the "notice and comment" provisions of the APA. *See* 5 U.S.C. § 551(4) (defining "rules" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency"). And furthermore, the Hurwitz Memorandum emphasized that RRC placements still must be made on an individualized basis. (*See* Gustin Decl. ¶ 20, Ex. A.)

### III. Recommendation

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **DISMISSED** for lack of subject-matter jurisdiction, or in the alternative, be **DENIED** on the merits; and

2. This action be **DISMISSED WITH PREJUDICE**.

Date: November 29, 2018.   *s/ Becky R. Thorson*_____
BECKY R. THORSON
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report on or before **fourteen days** from the issuance of this Report and Recommendation. A party may respond within fourteen days to those objections. All objections and responses must comply with the word or line limits set forth in LR 72.2(c).